UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    v.                                     Case No. 3:22-cr-116-TJC-LLL

ARIN CALEB ELLIS


## UNITED STATES' SENTENCING MEMORANDUM

The United States of America files this sentencing memorandum in this case to highlight and discuss defendant's sustained and wide-reaching criminal conduct in this case as well as to provide information, argument, and perspective to assist this Court in determining and imposing a just sentence.

## SUMMARY

"People honestly believe loving a youngie is worse than killing someone. I understand *why* it's wrong, but I also understand *why* it's right." – Arin Caleb Ellis

For four years, the defendant, Arin Caleb Ellis, conspired with other sexual predators to locate and sexually exploit vulnerable children online all while maintaining the façade of a law-abiding citizen. The defendant shared the spoils of his predation with his co-conspirators—namely, videos of children engaged in sexual acts—and provided the minors' usernames and helpful tips, so that his confederates could also locate these child victims in cyberspace and exploit them. Although there were only nine child victims that have been identified in this case to date, the

defendant and his co-conspirators were recording thousands of minors per week, so the number of potential victims is staggering and will likely never be known.

The defendant and his co-conspirators used multiple chatrooms on a particular social media platform to strategize and carry out their shared mission of online sexual exploitation of children. The chatrooms were dedicated to three primary topics: (i) discussion of the co-conspirators' sexual interests in minors, (ii) discussion of how to find minor victims online and successful tactics to persuade these children to produce and send them child sexual abuse materials, and (iii) the exchange of child pornography between and amongst the co-conspirators. The defendant and his co-conspirators created rules, protocols, and systems for the chatrooms to ensure that the members remained focused on the goal of collecting (mostly live streaming) child pornography and to ensure that their discussions occurred in the correct chatroom (e.g., the "faq" channel was for questions and answers about the purpose of the group and the roles of its members, and the "Talk Strategy" channel was created for members to plan how to better exploit children). The defendant treated the online persuasion and victimization of children like a sport, identifying shortcomings in his techniques and developing better techniques to record sexually explicit conduct.

## FACTUAL BACKGROUND

I.    **The defendant conspired with other predators to target children for sexual exploitation and the production of child pornography.**

From at least January 16, 2018, the defendant was an active member of at least two chatrooms on a particular social media platform, referred herein to as "App

2

D," dedicated to the sexual exploitation of minors. Presentence Investigation Report ("PSR"; Doc. 58) at ¶ 16-17. The users in the chatrooms worked together to produce, advertise, distribute, receive, and possess photos and videos of minors, including young, prepubescent children, engaging in sexually explicit conduct. *Id*. The chatrooms were divided into text "channels" (sub-chatrooms), many of which corresponded to live streaming social media platforms where the users in the chatrooms sexually exploited minor victims. *See generally* Gov't. Ex. 1 (logs of App D Group). The defendant posted both on the text channels of the chatrooms and communicated via direct message with other users on App D who were also members of the chatrooms. *Id*.

The defendant was one of the early members—if not the founder—of the chatrooms on App D. *Id* (refer to the "general channel" in Gov't. Ex. 1 for the defendant inviting members and posting on some of the first days of the group). The defendant communicated the goals and purpose of this particular chatroom to the other users. *Id*; *infra* at 5. The members were made aware that the purpose of the group was to work together to locate minor victims on social media platforms, mainly live streaming platforms, where the users could communicate with the minors and get the minors to engage in sexually explicit acts and produce sexually explicit content. *Id*. The users were told to capture or record the content and share it amongst the members of the chatroom. *Id*. For example, on or about January 17,

2019, on the "general-chat" text channel of the chatroom, one of the defendant's co-conspirators, Mark Black[1], made the following posts:

- "Since we've added some folks, it probably bears outlining why we have created yet another server. I'll take a stab at it."[2]

- "The Cooperation [chatroom][3] was established with the goal of uniting boys in search of smoothies[4]. The purpose was to work together to secure these and, as the number of pervs and BMers increased, lead girls to safe, fun spaces with boys they liked and trusted."

*Id*. After Black made these two posts, another user stated, "Yes. and as it turned out not everyone was working towards our common goals. Sonwe [sic] are trying over again. same ultimate goal. search and secure smoothies so we all can enjoy, including the smoothies themselves." *Id*. The defendant grew frustrated with the lack of work by others towards their goals and then stated on May 25, 2019 in the "general-chat" channel:

- "cooperation was a split off for us to work together as a group. it was a joining of two teams. newhome is a split off for us to work together as a group. it was the split of cooperation. what's next? we're still not working together. im about a flick of a wrist away from leaving this hobby entirely because i just cant seem to find someone to fucking work with, and i don't care to put in enough effort or dedicate enough time to go off on my own. i've used my time to develop tools to make it easier to find girls on apps and cap any wins we manage to get. we have a sever of 13 people, but are, for some reason, letting a group of half that many run us over. they've completely taken over two (if not more) apps now because we haven't been active on them. [Black] has done all within his power to prevent it, but he's one on his own against many. it's insanely stressful watching these girls get taken and no one cares enough to do anything about it. i link girls as soon as i come across them, but my spotting time doesn't seem to be getting any use. everyone has

---

[1] *United States v. Mark Black*, No. 1:23-cr-146-LMB (EDVA). *See also* PSR at ¶ 18.

[2] All communications on App D are reproduced herein exactly how they were written.

[3] The Cooperation chatroom was a previous App D chatroom that had the same goal and purpose as that of the main chatroom on App D. Defendant was a member of that chatroom.

[4] Based on the context of the communications on App D, the term "smoothies" refers to a minors with no pubic hair.

their own excuse as to why they can't or don't want to. i have mine, but it's easily solvable by taking an hour to make a boy account."

*Id.* The defendant also explicitly laid out rules to avoid law enforcement detection. On December 11, 2020, in the "reception" channel, he stated:

- "I'd just like to add we have 2 main rules: no screenshots/images containing nakedness. This is for your safety and ours. Any normal buzzwords should be modified: poosi, pedro, bobs, etc . . . If you have any questions, don't be afraid to ask. I (we?) try to treat every question as a serious one, especially for newcomers"

*Id.*

Once the members of one of the chatrooms joined the group, many of the users introduced themselves on the "reception" text channel by describing the type and age of minors in whom they had a sexual interest. *Id.* On March 27, 2019 and on July 30, 2019, the defendant posted his preferences on the reception text channel:

- "8-11, hairless, cute, long hair on the head (preferred), skinny, and white 😍"
- "sometimes i'll go for 6-7 if she's super cute/adorable"

*Id.* Members of the chatrooms described the roles that the users were expected to take on. *Id.* For example, in the "faq" channel, the following messages were posted to the group by the defendant and two other users between on or about January 22, 2019, and between on or about January 24, 2019:

- "FAQ #1: Why? Answer: They don't think it be like it is, but it do."

- "FAQ #2 - *Simple questions to gauge prospective new members*: Hi - we're considering a new server. To make sure it's the right fit for you, can you answer these questions please: **a) Is any nude a win for you or do looks matter? b) Do you generally prefer 8-12 or 13-17? c) Do you know how to cap? d) Do you have a FC/GL accounts? If not, are you willing to create an FC/GL account to swoon girls into capping? e) Do you run a VPN and if so, for how long? f) Are you fluent in English or another language? g) What do you enjoy most - the win (the nakedness), witnessing a girl discover her sexuality, the tease or meat curtains? h)

5

Consider a girl is teasing on a broadcast – her location is open and she just gave her phone number out - you notice a brutal Ellismailer in the list of watchers - do you: 1) warn her and block a potential epic win. 2) sit back and say nothing or 3) keep pushing her towards what might be the win of your lifetime **"

- "@everyone Main roles are in captal letters. Sub roles are in lowercase TALKER (sub roles: spotter/capper) *A TALKER is dedicated to get in with the girls by talking. He will need some social media knowledge and the ability to take girls into a private atmosphere and ultimately and as fast as possible into a private broadcasting atmosphere for us all to keep working on her. TALKER primarily targets ids posted by the SPOTTER regardless of his own preferance when it comes to the girls. He may also go for girls he feels might provide the wins. if there are no prospects to work on he supports the spotters or cappers* SPOTTER(sub roles: capper/talker) *Maybe the most versatile role. It is important for a spotter to be able to read a girls body language and personality so he can notify the CAPPER or the TALKER or maybe both in time. He will try to see if a girl is more fit for a private or public win and notify the right role(s). He also considers the preferences of all team member when choosing targets. If no TALKER or CAPPER is available he takes on his sub roles. He will most likely also be the one who gets the longest cap since he spotted the win first. and he will upload that cap in the appropriate room using a predefined format.* CAPPER (sub roles: spotter/talker) *The main task of a CAPPER is to cap and upload any id/broadcast notified by the SPOTTER. Regardless of his own preferances. He will have to have constant access to a computer while active for this purpose. He will make uploads and post on the driproom on this server using a predefined format decided by the group. A small description is required so people know if this is a girk according to their own liking before downloading. Once a cap is started he can support the other roles in talking/spotting where needed*"

*Id.* As the defendant himself stated, *supra* at 5, he was both a spotter and a capper.

## II.    The defendant and his co-conspirators discussed the best tactics for sexually exploiting children.

In accordance with the rules and goals of the group, the members, including the defendant, worked together to exploit minors to engage in sexually explicit acts and send sexually explicit content of themselves over multiple social media platforms. PSR at ¶ 16. The defendant actively planned how to better groom and entice minors.  On October 12, 2019, in the "Likee Talk Strategy" channel, the defendant posted:

- "i wanted to type a few things before i go to sleep so i can wake up to some responses: 1. we need some kind of plan of action. when someone finds a girl suitable for a group, what are we to do? what group chat app are we to use? snapchat, instagram group, etc? 2. we need to establish an ultimate goal for the group to work towards. it can vary from girl to girl. ex: snapchat videos, instagram livestream, periscope livestream 3. communication is vital. no one here can read minds. 4. it's ok if not everyone is available at the same time. as long as we have a handful ready to work when a girl is found, we can still cooperate as a group. also, in the event no one is available, group chats can still be formed. 5. if a girl says she's les, it's probably best to keep a girls-only group. if she's straight or bi, both males and females should work. this is open to the discretion of the finder and should be communicated when mentioning the find 6. we need to establish a proper plan for finding girls. a group likee account was mentioned. i can't comment as i've never handled or dealt with one. 7. outsource jobs to india, and try to sell the product to china 8. ??? 9. Profit"

*See* Gov't. Ex. 1 (logs of App D Group).

The defendant also was a leading computer coder among his peer group of predators. He developed multiple codes to hack into social media applications or live streaming applications and auto-record content. He would then share this content with the group. Below are just a few examples of the defendant discussing his work to develop code to target and record minors:

| Channel | Date | Message |
|---------|------|---------|
| "dl-links" | January 22, 2019 | 1. fixed right click -> play stream buttons on the autocap page 2. hopefully fixed duplicate streams for timing out api requests (expect lots of "Timed out @ (timestamp)" message boxes for now; later i will make this either log to a file or just ignore it entirely. maybe add a counter to the UI, donno) 3. i modified the sorting code for the listview control a bit. it's nearly instant sorting now. don't ask me how this was accomplished because i have no idea LOL 4. future: it has been requested for a button or similar to end all ffmpeg processes when stopping the autocapper. let me know if this is useful. i intentionally did not include this function but it won't be difficult to add if considered useful." |

| "general chat" | August 14, 2019 | ive been working on FCMT trying to make it a little better. i've added a checkbox to cap the "fake private publics" and im working on the code for radio buttons to select between rtmp/flv/m3u8 urls for capping |
|---|---|---|
| "talk strategy" | January 12, 2019 | glmt is more or less ready for an updated release. any last requests? i still need to test and make sure autocap functions flawlessly. everything else is perfect and im extremely happy with how it has turned out. i updated the sorting algorithm from insertion to heap sort and it's SO much faste |
| DM to Mark Black | November 22, 2018 | i hate we can't really develop an autocapper for golive until we figure out how their signing works which probably won't happen because it's based on their AWS credentials |

*Id.*

## III.     The defendant also hacked into online baby monitors.

There was an entire channel on the Discord server dedicated to "IP Cams." This channel was designed by the defendant to surreptitiously tap into and record content from baby monitors, "nanny cameras," or any other internet-enabled cameras within private residences. *Id*. The defendant was particularly proud of this channel, stating:

- that's what ip cams are for. . . can peek all day long without anyone knowing 😊

*Id*. Other users would periodically provide IP addresses to the defendant, who developed his own computer code to hack into these devices. *Id*. He would then share the live video feeds in the channel and other users would watch and comment on them. *Id*. On April 24, 2021, the defendant stated, "girl in France, sometimes sits

in mom's lap panti-less for a bedtime story. she's ~4." *Id*. Moreover, the defendant, in

the "Dl-links" channel, spoke often about his IP Cam hacking,

- More specialty content: Hispanic family, so yes, they're brown. The girl is cute, though. Mom applies cream to daughter's "wound". She really makes sure to rub it in nice and thoroughly. I wish the lighting was better, but it is what it is. New find and addition to my cam collection, so this is all I have of her. I got lucky I guess to add her in time to see this happen. Last night after her bath/shower she dressed outside of the bedroom 😐 | page pw: owPxXZ | archive pw: ``Cream application to a sweet spot on a sweet girl``

- Another specialty of a girl who is oh-so-close yet oh-so-far. She's aware of it and it's obvious. She is so adorable that I've dedicated the majority of my monthly data to hoping to see her in a decent show. The most she has done is hop up on the bed in underwear in 4+ months of capping. Her dad blocked the cam http outbound port so I couldn't access it anymore but forgot to block the rtsp port so she is still active. The cam is set on the highest quality setting so max sustained data rate is something crazy like 1.5MB/s (12mbit/s). That's 5.4GB in one hour of capping if the lights are on 😧 She's dear to me and her dad is apparent so please do not share. dropmefiles.com/EHcVT | pw: ``Girl from New Jersey is frisky but mostly nn``

*Id*.

The defendant's "nanny cam" hacking technique to exploit children was

described as "next level targeting" by Black in the "IP Cams" channel on January 27,

2019:

- Defendant – "found this girl on ipcam, she was browsing tiktok or like on a tablet earlier tonight. i'll have to pay closer attn and see exactly which app it is her name is [MINOR NAME], and i think her last name is [MINOR LAST NAME]"
- Mark Black - Can u tell county?
- Defendant - ip lookup says [REDACTED], Montana
- Mark Black - Next level targeting

*Id*. The defendant and Black frequently discussed the locations of these cameras

frequently, and they were sometimes able to determine the exact physical location of

such cameras. Two child victims who were exploited using this technique have been identified.

**IV.    The defendant and his co-conspirators shared their successful "caps," i.e., video recordings that captured minor children being sexually exploited.**

After the members successfully captured minors engaging in sexually explicit conduct, they exchanged the content by uploading the files directly to the chatroom or they uploaded the files to third-party file sharing platforms where the users could access the links and download the content. PSR ¶ 16-17. On many occasions, the users also shared the ID numbers and usernames associated with minors' live streaming and other online accounts so the users on the chatroom could follow, watch, and record the minors' activity, which often included the minors engaging in sexually explicit activity. *See* Gov't Ex. 1. Below are examples of how users exchanged sexually explicit depictions of minors, as well as their IDs and usernames of minors in the chatroom:

- On July 11, 2019, a user posted a MEGA (third-party file sharing platform) link on the "dl-links" channel.

  - The link directed the users to a video file that was 25 minutes and 58 seconds in length. The video depicted a female with a tank top and shorts on. The female can be seen spreading her legs open. She takes her right hand and moves her shorts and underwear over to the right and exposes her pubic area to the camera while counting to ten. She then uses her left hand to move her shorts over, exposing her pubic area to the camera. The female moves her shorts to the left again and rubs her pubic area with her right hand. The female stands up and takes her shorts and underwear off. The female then spreads her legs exposing her pubic area and buttocks to the camera. The female appears to be prepubescent as she has little to no breast development and no pubic hair.

- On September 26, 2019, a user uploaded a file directly to the "requests" channel.

    - The uploaded file is an image with six "windows" depicting a prepubescent female engaged in sexually explicit conduct. Specifically, in one "window" the prepubescent female is standing up with her pants pulled down using her hands to expose her vagina to the camera. Two of the other "windows" depict the prepubescent female exposing her chest and her belly to the camera. In one of the "windows," a prepubescent male is engaged in sexually explicit conduct as someone is holding his penis with their hand. In another "window," the prepubescent male and female are engaged in sexually explicit conduct as she places her mouth on the prepubescent male's penis.

*Id.*

The defendant and other users in the chatrooms made specific requests for files of certain minors engaged in sexually explicit acts. *Id.* If other users had the requested files, they uploaded the files directly to the chatrooms or sent the files via a third-party file sharing platform. *Id.* Users, including the defendant, thanked one another for sharing sexually explicit files on the chatrooms. *Id.* For example, on August 13, 2019, in the "dl-links" text channel, the defendant stated, "Thanks for actually sharing something" *Id.*

## V.        The defendant sexually exploited Minor 1, a 10-year-old child.

From October 9, 2021 through January 21, 2022, the defendant, posing as a minor female and using a particular photo and video sharing application, App S, engaged in online communication with Minor 1, a prepubescent 10-year-old child. The conduct is the basis for Count One of the indictment, and the messages provided by App S between the defendant and Minor 1 are attached as Gov't Ex. 2. Minor 1's

username is redacted, and the defendant's username is partially redacted showing only 2019.

On December 31, 2021, Minor 1 sent the defendant a photo of herself. PSR at ¶ 21-22; *see* Gov't Ex. 2. In the communications between Minor 1 and the defendant, on multiple occasions, the defendant threatened to release Minor 1's "special pictures" that Minor 1 had previously sent to him. *Id*. For example, on January 4, 2022, at 9:28 PM, the defendant sent the message, "I'll give you a chance to see this message before I share your special pictures with your parents." *Id*.

After sending multiple threats to Minor 1, it appears that Minor 1 sent additional files to the defendant. *Id*. For example, on January 4, 2022, at 10:10 PM, Minor 1 confronted the defendant stating, "You just threatened me," and "you made me send dirty pics every night." *Id*. The defendant then denied the allegation and stated, "One night is all that ever happened" and "I asked nicely that night but all the other stuff you ever sent was your choice." *Id*. At 10:22 PM, Minor 1 asked the defendant, "What do I have to do to make you not send my parents my nudes!" *Id*.

At 11:52 PM, Minor 1 stated, "Ok I'll make the video." *Id*. At 11:58 PM, the defendant replied, "Remember when I said no filter?," and "And also spread your pussy." *Id*. At 12:08 AM, the defendant stated, "There wasn't any sound." *Id*. The defendant forced Minor 1 to produce several sexually explicit images. *Id*. Several of the images and videos depict Minor 1 exposing her pubic area and anus to the

camera, Minor 1 penetrating her vagina with her finger, and masturbating her genitalia with her hand. *Id.*

## VI.     The defendant distributed a sexually explicit video depicting Minor 2.

The FBI served a federal search warrant and seized evidence contained in the defendant's App S that he used to target and sexually exploit minor children. PSR at ¶ 20. On September 21, 2021, the defendant sent a 47-second video over the internet to another user, "heyits[xxx]02" that depicted an 11-year-old prepubescent minor child, Minor 2, wearing a blue bra and sitting on a bathroom floor with legs spread displaying her genitalia. *Id.* Minor 2 is depicted as she uses her fingers to masturbate during the entire video. *Id.* This conduct is the basis of Count Two of the indictment.

## VII.    The defendant worked in tandem with Mark Black to sexually exploit a 10-year-old child.

As previously stated, the defendant exchanged direct messages on App D with users from the chatrooms. PSR at ¶ 16. For example, between October 28, 2018, and August 9, 2021, the defendant and Mark Black discussed the sexual exploitation of a 10-year-old child, Minor 3. *See* Gov't Ex. 1. In 2019, Black communicated with Minor 3 via App S. *Id.* Black persuaded Minor 3 to engage in sexually explicit conduct. *Id.* Unbeknownst to Minor 3, Black requested that the defendant remotely log into and access the App S conversations between Black and Minor 3 and record the communications and sexually explicit conduct performed by Minor 3 at the direction of Black. *Id.* On July 21, 2019, the defendant sent at least one recorded session of Minor 3 to Black via a link on a third-party file sharing platform. *Id.*

VIII.    **The defendant used App S to send and receive child sexual abuse materials and to hunt for new minor victims.**

From on or about July 22, 2019 through on or about March 16, 2022, the defendant was a member of at least two additional groups on App S dedicated to the sexual exploitation of minors. PSR at ¶ 16. Members of App S groups, including the defendant, discussed minors in a sexual manner and knowingly sent and received depictions of minors engaging in sexually explicit conduct during the course of the group chats. *Id.*

Below are examples of files sent and received by the users, including the defendant, in one of the App S groups:

- On December 25, 2019, the defendant sent a female's name and residential address in North Carolina.

- On November 5, 2020, a user in the group sent five images. The first image depicts a minor female who is nude and sitting on the floor in a bathroom. The female is lying on her back with her head lifted and her legs are in the air. The female's hands are touching her buttocks. The female's vagina and anus are exposed to the camera. The second and third photos are an up-close image of a female's vagina and anus. The female has no visible pubic hair. The fourth and fifth images are a minor female who is nude, leaning on her knees and looking into the camera.

- On November 7, 2021, the defendant sent the group the Snapchat username for a female that he separately communicated with from an additional Snapchat account that he utilized as a catfish account. The female stated she was 10 years old.

- On December 21, 2021, Mark Black sent an image depicting a blond-haired prepubescent female with a green sweater on who is lying on her back with her legs lifted in the air. The female does not have pants on. The female's anus and a portion of her pubic area is visible and the focus of the image.

- On December 24, 2021, the defendant sent a DropMeFiles link to the group followed by a message. During the course of the investigation into the defendant, it was discovered that he exchanged sexually explicit images and videos via

DropMeFile links with other users. DropMeFile is a third-party file sharing application. After uploading a file, a link is created that can be shared so that other users can access the file. The links are time sensitive and as such this link was no longer active when law enforcement located these communications.

IX.    **The defendant possessed a vast collection of child pornography on his electronic devices.**

Although many of defendant's devices were encrypted and thus inaccessible, in total, the forensic examination recovered at least 1,700 unique photos and at least 700 unique videos depicting minor children engaged in sexually explicit conduct, including masturbation, lascivious exhibition of their anus and/or genitalia, and genital-genital intercourse between two minors. PSR at ¶¶ 24, 25, 26. The defendant maintained these photos and videos on his electronic devices and in his online social media app accounts. Several of these sexually explicit photos and videos depict prepubescent minor females, some as young as approximately 6 years old. *Id.* at 26. Some of the prepubescent minor females are depicted as they were penetrating their genitalia with foreign objects such as toothbrushes, hairbrushes, pens, and markers. *Id.*

X.    **The defendant does not believe that the sexual exploitation of children is wrong.**

The defendant used App D to discuss and share his thoughts and philosophy regarding the sexual exploitation of children. *See* Gov't Ex. 1. On June 8 through June 11, 2019, the defendant and a co-conspirator had the following conversation in the "general chat" channel:

- Co-Conspirator 1: June 11, 2019 07:04 PM: https:
  //www.justice.gov/opa/pr/nearly-1700-suspected-child-sex-predators-
  arrested-during-operation-broken-heart
- Co-Conspirator 2:  June 11, 2019 07:45 PM: Sometimes I totally forget that
  what we do is highly unethical😂
- Defendant: June 11, 2019 07:45 PM: it doesn't have to be
- Co-Conspirator 2: June 11, 2019 07:45 PM: At least from society's point of
  view
- Defendant: June 11, 2019 07:45 PM: fuck society . . .brainwashed idiots
- Co-Conspirator 1: June 11, 2019 07:46 PM: And highly dangerous
  <@514867131276460042>
- Defendant: June 11, 2019 07:46 PM: affection between an old person and a
  young person, regardless of age, is only gross because groupthink
- Co-Conspirator 2: June 11, 2019 07:46 PM: I mean you could say that we
  create and distribute cipi😊
- Defendant: June 11, 2019 07:47 PM: if anyone hasn't seen *Pretty Baby*[5], it's
  a great movie for the topic, and i recommend watching it

*Id*. On September 23, 2019, in the "general-chat" channel, the defendant continued:

- Co-Conspirator 3:  September 23, 2019 03:20 AM: I'm at a bar hanging out
  with some buddies. One of my buddies just said your a real hero if your going
  after Pedro's🙇🤭Why does everyone have to go against us
- Defendant: September 23, 2019 03:49 AM: Because it's socially frowned
  upon. People honestly believe loving a youngie is worse than killing someone.
  I understand *why* it's wrong, but I also understand *why* it's right.

*Id*. Finally, the defendant often spoke about his feelings on when children were ready

for sexual intercourse with others:

- Co-conspirator 4: October 04, 2019 07:50 AM - An 8yo can have tits and a
  hairy poosi She can be on her period and have a sex drive 40yo dudes can be
  hot and attractive for an 8yo As long as I didn't drug her into oblivion it's
  fucking ridiculous What's your point? 😉
- Defendant: October 04, 2019 08:15 AM: if she's menstruating, she's ready

*Id*.

---

[5] "Pretty Baby" is a 1978 film based on the true account of a young girl who was sexually
exploited by being forced into prostitution by her mother.

## SENTENCING ANALYSIS

### I.  Statutory Penalties and Sentencing Guidelines Calculations

The defendant has pleaded guilty to production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count 1), and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 2). *See generally* Doc. 53. Count One carries a mandatory minimum term of 15 years' imprisonment with a maximum term of 30 years' imprisonment. 18 U.S.C. § 2251(a) and (e). Count Two carries a mandatory minimum term of 5 years' imprisonment with a maximum term of 20 years imprisonment. 18 U.S.C. § 2252(a)(2).

Although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing, a court "must first calculate the Guidelines range" applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49–50 (2007).

The PSR has calculated the total offense level for the defendant under the Sentencing Guidelines (USSG) at combined adjusted offense level is 49. PSR at ¶ 59. This includes a well-earned and aptly-named 5-level enhancement for being a "repeat and dangerous sex offender against minors." *Id.* The defendant has been credited with a 3-level downward adjustment for acceptance of responsibility. *Id.* at ¶ 60. Of course, pursuant to USSG Ch.5, Pt.A, comment. (n. 2), the defendant's offense level is capped at 43. The defendant's criminal history score is zero, resulting in a

17

Criminal History Category I. *Id.* at ¶ 68. At total offense level 43 and Criminal History Category I, the defendant's guideline imprisonment range is life. *Id.* at ¶ 102. However, the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 600 months, or 50 years. *Id.;* USSG §5G1.2(b). This recommended advisory guidelines range has been correctly calculated by the Probation Officer.

## II.        Sentencing Recommendation

After calculating the advisory sentencing guidelines, a court must then consider that range, as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also Gall v. United States*, 552 U.S. 38, 50 (2007) These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See generally* 18 U.S.C. § 3553(a).

In this case, it is the position of the United States that a sentence of 600 months' (50 years) imprisonment is appropriate given the seriousness of the defendant's crimes, the duration of his criminal conduct, the harm he caused to many, many children and their families, his risk of recidivism as shown by his statements and philosophy regarding child sexual exploitation chronicled herein, and

the need to deter the defendant and others from committing similar crimes while hiding behind the safety of internet and their computer screens.

### A.    The nature, circumstances, and seriousness of the defendant's offense

The defendant solicited, produced, distributed, collected, and possessed depictions of young children being sexually abused and psychologically tortured for four years—all while maintaining the façade of a law-abiding citizen. Although several child victims of the defendant's online ring of conspirators have been identified, the full scope of the harm perpetrated by the defendant's predatory cabal may never be known or quantified. He worked in concert with other online offenders on various social media platforms, using different monikers and fake persona, to exploit and attempt to exploit thousands of minor children.

The defendant's conduct was as sophisticated as it was diabolical. For example, the defendant's group used computer programs to auto-record victims. On one particular single day, the program auto-recorded the live video streams of 463 separate minors, and this program ran from October 30, 2019, to August 22, 2021. *See* Gov't Ex. (Facecast Bot Channel). This means that there are potentially over 330,000 recordings available. This estimate represents the recordings on just one of the approximately 14 different social media channels that the defendant and his co-conspirators used to exploit minors.  While it is possible that not every recording constituted child pornography, the group was surveilling thousands of minors' accounts, day and night, in an attempt to catch them engaging in sexually explicit conduct.

19

The multiple victims of the conspiracy whom law enforcement were able to identify experienced threats, manipulation, and grooming to get them to produce. Then, after the victims shared their images (with people whom they often believed were children their age), the defendant and his confederates shared them over the internet. They dehumanized their victims, making demeaning and repugnant comments about the targeting children, showcasing the utter depravity of their actions:

- On October 29, 2019, the defendant stated, "MV3 from 28 Oct 2019 ```dropmefiles.com/[REDACTED] pw: Who the fuck pours urine on themselves```."
- On July 15, 2023, the defendant stated: "[Unidentified Minor Name] got that gross black people hair 🙁."
- On January 20, 2021, the defendant stated: "[Unidentified Minor Name] was difficult to get going, but once she did, it was snap after snap after snap. Sorry about the black frames between snap segments. It's the version of [APPLICATION S] I'm using (fairly old) and it's not super easy to trim out those bits unfortunately. pw: ``FEEL1NG`` pw: ``[Unidentified Minor's full name] of [Unidentified Minor's city and state] on [APPLICATION S]``."

There have been conversations between law enforcement investigating this conspiracy and several identified child victims and their parents. During these contacts, several parents of the minors affected by the defendant's conduct explained, among other things, that their child has struggled with suicidal thoughts, has regressed mentally and can no longer participate in schooling outside the home, and is in therapy to address the trauma of being threatened/exploited before they reached puberty and knew what sex actually was.

A great deal of effort was made to obtain victim impact statements from these identified victims, but only one has been received at this time. It is not uncommon

and quite understandable that child victims often struggle to discuss their sexual abuse. It is so often unusual for victims to disclose such abuse at all, regardless of their age. However, when victims do report, a high percentage of them delay disclosure well into adulthood.[6]

As highlighted above, the sheer brazenness and lack of remorse that the defendant has shown concerning his conduct is astounding. He viewed enticing children as young as eleven into producing child pornography as a game and he thought society was wrong to stop him. He threatened minors, including making a threat to burn a minor's house down, to get them to do what he wanted. In addition to the minors whom the defendant tracked down online, groomed, and sexually exploited, he had at least 1,700 unique photos and at least 700 unique videos depicting minor children engaged in sexually explicit conduct. The defendant's trafficking and possession of child pornography re-victimized those depicted and contributed to the broader cycle of child sexual abuse.

Such crimes inherently involve the sexual abuse of children, even if no new child pornography is produced. *See New York v. Ferber*, 458 U.S. 747, 759 (1982); *United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012) ("[C]hild pornography creates an indelible record of the children's participation in a traumatizing activity,

---

[6] *See Youth Victimizations: Prevalence and Implications*, Department of Justice (2003), Page ii, https://www.ojp.gov/pdffiles1/nij/194972.pdf. *See also* Hanson, R. et al., *Factors related to the reporting of childhood rape*, Child Abuse & Neglect, 23, 562 (1999), https://www.ncbi.nlm.11ih.gov/pubmed/10391513 ("82.9% did not report any of the rapes they experienced during childhood.").

and the harm to the child is only exacerbated by the circulation of the materials."). "Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children "must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," and they "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Id.* at 547-48.

**B.      The need to promote respect for the law and to afford adequate deterrence to criminal conduct**

This is a case of an individual who *knew* what he was doing was wrong, *knew* the consequences, and still proceeded to exploit children in every way possible for at least four years. A sentence of 600 months' imprisonment is sufficient but not greater than necessary to deter the defendant and others from engaging in this conduct in the future. The Court's sentence must constitute a loud and clear warning to potential sexual offenders that severe consequences will result from such atrocious acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the

child pornography context.'" *United States v. Irey*, 612 F.3d 1160, 1211 (citation omitted). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (citation omitted); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

In considering the technological sophistication of the defendant, the United States maintains that the risk of recidivism associated with this defendant is high. Though no study or expert can predict whether this defendant will or will not choose to return to exploiting children, his actions suggest that such concerns are well-founded. The defendant has stated that he honestly believes sex with minors is not wrong and that children want to be sexually abused. The defendant's sustained criminal conduct indicates an ongoing sexual interest in children as well as total disregard for their wellbeing and for the law. Thus, the recommended sentence of 600 months in prison is appropriate and necessary to incapacitate and deter the defendant as well as to protect children.

**C.    The history and characteristics of the defendant**

The defendant had a relatively stable life from high school onward, with the support of two loving parents. PSR at ¶ 77-81. Since then, he obtained a degree in science and worked in the information technology field. PSR at ¶ 92. He might have

used his intelligence and education to find ways to battle his prurient sexual interest in children. If there was ever a defendant that had the time and opportunity to reflect on his choices, stop exploiting minors, or at least show some remorse, this is such a defendant. But, he did not do so. Rather, the defendant did nothing but feed his unsatiable desire to harm children and share his skills at doing so with other online sexual deviants.

Any notion that the challenges faced by the defendant in his youth, *see* PSR at ¶ 74, are somehow justification or mitigation for his crimes minimizes his responsibility and denigrates others who have had similar life obstacles but never committed such heinous crimes. The bullying that he allegedly endured as a child cannot excuse or absolve him from full responsibility for sexually abusing children online. The victims of his crimes—young, innocent children seeking friendship online—are the ones who now experience challenges beyond imagination.  On balance, the history and characteristics of the defendant make clear that he has lived a stable life with an extremely supportive and loving family and had adequate education and resources to live a law-abiding life. PSR at  ¶¶ 78-95. He was not corralled into this criminal conduct by a series of unfortunate life circumstances or because of his poor mental health. Rather, the defendant chose his path and continued on it for years until he was stopped by law enforcement.

## **CONCLUSION**

The defendant is intelligent, organized, creative, and extremely sophisticated in his knowledge of computers and the internet. Unfortunately, he used his skills to

sexually exploit and terrorize scores of innocent victims, seemingly driven by a powerful and sadistic sexual interest in children. Worse still, he taught and encouraged other like-minded pedophiles to work in concert with him over a period of years to engage in this depraved behavior. The shared purpose and efforts of this conspiracy acted as a force multiplier that compounded the harm to the child victims. This Court's sentence should reflect the gravity and scope of his criminal conduct, incapacitate him so as to prevent him from ever having the opportunity or means to repeat it, and send a strong message to others in the community that such conduct will not be tolerated.

WHEREFORE, the United States respectfully requests that the Court impose a sentence on defendant that includes a term of 600 months' (50 years) imprisonment.

Respectfully Submitted,

ROGER B. HANDBERG
United States Attorney

By:     *s/ D. Rodney Brown*
        D. RODNEY BROWN
        Assistant United States Attorney
        Florida Bar No. 0906689
        300 N. Hogan Street, Suite 700
        Jacksonville, Florida 32202-4270
        Telephone:   (904) 301-6300
        Facsimile:    (904) 301-6310
        E-mail:        rodney.brown@usdoj.gov

By:     *s/ McKenzie Hightower*
        MCKENZIE HIGHTOWER
        Trial Attorney, Criminal Division
        DC Bar No. 1779264
        1301 New York Ave. NW, Suite 11
        Washington, DC
        Telephone:   (202) 215-7126
        Email: mckenzie.hightower2@usdoj.gov

**U.S. v. ARIN ELLIS**                                   **Case No. 3:22-cr-116-TJC-LLL**

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to the following:

Lisa A. Call, Esq.
Assistant Federal Public Defender


*s/ D. Rodney Brown*
D. RODNEY BROWN
Assistant United States Attorney