UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case No.: 3:22-CR-116-TJC-LLL

ARIN ELLIS
_____

## SENTENCING MEMORANDUM

The Defendant, ARIN ELLIS, files this sentencing memorandum for the Court's consideration at the upcoming sentencing hearing:

## INTRODUCTION

Mr. Ellis will stand before this Court for sentencing when he is only 27 years old. He will face a term of incarceration of 15 years, with an advisory guidelines range at the statutory maximum.

## MR. ELLIS'S HISTORY AND CHARACTERISTICS

Mr. Ellis struggles with the shame caused by his actions in this case and the hurt that he has caused. But he feels relief that everything is over, and everything is out in the open. Even though this brings him embarrassment, he can now get help addressing the underlying issues that brought him to this

1

point.[1]

Arin Ellis was born in Brandon, Florida, but grew up mostly in Tallahassee. He and his family lived for about two years in Anniston, Alabama, before he started school, and for about a year in Panama City, Florida, when he was in middle school, due to his father's work.

He is a later in life, second family baby for both his mother and father: his mother was 37 years and his father 46 years old when he was born. Thus, although Mr. Ellis has siblings, he grew up as an only child with parents who had already been through the kids' activities and family events stage of life. According to a family friend, Mrs. Ellis had a brain tumor removed shortly after Arin was born.[2] Due to this medical incident, her neighbor speculates that she was not as able to bond with Arin.

The Ellises are very guarded, but both parents are shocked by his admitted behavior in this case, which they say is completely out of character for the shy, socially awkward son they know. Family friends in Tallahassee, who have known Mr. Ellis since childhood, say the same thing. Mr. Ellis maintains that depressive, socially awkward personality to this day, the exact

---

1 Mr. Ellis's letter to the Court is attached as Exhibit 1.
2 Letters from family and friends are attached as Exhibit 2. Family photos are attached as Exhibit 3.

2

opposite of his online persona.[3] He has never dated or had a romantic relationship. It is interesting that the only community letters of support received from people his age were from friends he met online, never in person.

School was a traumatic house of horrors for Mr. Ellis, particularly when he was younger. He was overweight, extremely awkward socially with very low self-esteem and no real friends. Picture the unfortunate child who is always picked last, no matter whether it is for kickball or when asked to team up for class assignments. He was picked on and bullied constantly. His parents both believe that something really negative occurred late in middle school because that's when his personality changed, and he became extremely withdrawn, socially isolated and non-conversant. But whatever it was, Mr. Ellis will not discuss it. Nevertheless, Mr. Ellis was a compliant, well-behaved student, praised and well-liked by his teachers, particularly in elementary school, as evidenced by their comments on his report cards.[4]

Mr. Ellis graduated Lincoln High School in Tallahassee in 2015, attended Tallahassee Community College and finally the University of North

---

3  For a dated but still relevant explanation of this phenomenon, see: John Suler, PhD, The Online Disinhibition Effect, CyberPsychology & Behavior, Rider University Department of Psychology, 2004
4  Pertinent records from Leon County Schools are attached as Exhibit 4. The undersigned received 105 pages of records from Leon County, which can be provided upon request.

3

Florida, graduating with a degree in computer and information sciences after the Fall 2019 semester. Mr. Ellis began his hopeful job search just as the COVID19 lockdowns started and the job market crashed. Despite good grades and a new degree, he did not find challenging full-time work in his field. He was working remotely for an electronic medical record abstraction company when he was arrested.[5] Unfortunately, this remote work environment kept him feeling isolated and entirely living online.

Brain research has consistently shown the front of the brain, the prefrontal cortex, is one of the last areas of the brain to develop and is not fully developed until a person is in their mid-20s. It is the part of the brain responsible for, among other things, controlling impulses and anticipating consequences. As the American Medical Association and the American Academy of Child and Adolescent Psychiatry told the United States Supreme Court, "The adolescent's mind works differently from ours. Parents know it. This Court has said it. Legislatures all over the world have presumed it for decades or more. … Scientists have found that adolescents as a group, even at later stages of adolescence, are more likely than adults to engage in risky,

---

5 Previously he worked for PCLiquidations in Jacksonville refurbishing computers and would be considered for rehire there (Presentence Report, paragraph 93).

impulsive, and sensation-seeking behavior."

The Supreme Court has consistently found this research instructive in its landmark rulings in *Roper vs. Simmons*, 543 U.S. 551 (2005), rendering unconstitutional the death penalty for juveniles; *Graham vs. Florida*, 560 U.S. 48 (2010), holding that it is unconstitutional to impose life without parole sentences on juveniles in non-homicides; and *Miller vs. Alabama*, 567 U.S. 460 (2012), holding that mandatory life-without-parole sentences for juveniles are unconstitutional in all cases. As Justice Anthony Kennedy wrote in *Roper* and reiterated in *Graham*, "As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed." *Graham*, at 68 (citing *Roper*, at 569-570). This "often results in impetuous and ill-considered actions and decisions." *Graham*, at 72.

Although Mr. Ellis is not facing the death penalty or life imprisonment (a death in prison sentence) and he is not quite a juvenile, he was certainly young at the time of this offense. This research helps explain why someone who had good family support, no criminal history, and a good education could behave in such an immature and unthinking fashion.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Congress obviously viewed this offense as very serious: count one calls for at least a 15-year minimum incarceration sentence and a term of supervised release that could go all the way to lifetime supervision.[6]

Given those parameters, Mr. Ellis has always recognized that he faced a significant time in custody due to his conduct. Mr. Ellis has never denied the offense, nor its seriousness.

In its recent report entitled "*Federal Sentencing of Child Pornography: Production Offenses*" in October 2021, the Sentencing Commission noted that although production offenses (sentenced under USSG 2G2.1) represent a small percentage of the total sentencings, the cases are both significant and increasing. Among the significant factors the Commission analyzed was the offender's proximity to the victim. The Commission found that over one-third of production offenders were internet strangers who met their victims through an online platform, more than double the proportion of offenders sentenced in 2010 who met their victims online. *Id.* at page 5. Unfortunately, it appears that as many of our day-to-day interactions are shifting online and to social media

---

6 Congress increased the mandatory minimum term of imprisonment from 10 to 15 years for production of child pornography offenses under 18 U.S.C. § 2251 as part of the PROTECT ACT of 2003. As a result, the Commission increased the base offense level at §2G2.1 from 27 to 32.

(interacting with others and getting news), the potential for bad acts follows along.

## PURPOSES OF SENTENCING

*1. Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment*

No one doubts that Mr. Ellis committed a serious crime. However, the prosecution by the federal government demonstrates, both to Mr. Ellis and to the community-at-large, that these crimes will be dealt with harshly.

Despite the harsh penalty he faces, Mr. Ellis entered a plea of guilty to the charge with no pretrial litigation. He has served approximately 26 months in the Baker County Jail while awaiting the outcome. During time at the county jail, there is almost no programming or educational activities.[7] It is a time of great uncertainty: the only thing that Mr. Ellis can be sure of is that he faces a serious sentence, but he doesn't know how long he'll have to serve.

Mr. Ellis has never been arrested for any offense in his entire life. Prison is harsh, even without accounting for the type of charges faced by Mr. Ellis. Even though prison is obviously meant to be punitive, it often veers far beyond that into cruelty. Any sentence of imprisonment is dangerous. However, an

---

7 Baker County Jail records reflect that he has had no disciplinary reports or write-ups.

inmate like Mr. Ellis (slight and shy, having never been to prison, and charged with a sex offense) will be at heightened risk. According to the BOP's website, "The Bureau recognizes sex offenders as a vulnerable population within a prison setting."[8]  In spite of this recognition, there are only nine facilities in the entire BOP system offering sex offender treatment programs.[9]

Combined with the constant danger of prison, there is an unending monotony to the time. Every day in BOP custody, Mr. Ellis will be under the control of the guards and other authorities at the Bureau of Prisons. He will be assigned to a particular facility by the BOP and told what to wear, where to sleep, when to sleep, when to eat, what to eat, and what type of work to do. If he is given an institution work assignment, like food service, groundskeeper, or laundry, he will earn $.12 to $.40 per hour. He will be given some access to phone contact with the outside world, but all such contact will be closely monitored. He will have no space that is totally his own. For a young man who has never been to prison, this is a severe punishment.

It is difficult to image the social, technological, and political changes that will occur in the next 15 years. Mr. Ellis will miss them all, instead being

---

8 https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp, last accessed June 21, 2022.
9 *Id.*, FCM Carswell (a women's facility), FMC Devens, FCI Elkton, FCI Englewood, FCI Marianna, USP Marion, FCI Petersburg Medium, FCI Seagoville, and USP Tuscon.

confined in the Bureau of Prisons. He will see the seasons change from spring to summer to fall to winter, all from behind barbed wire fencing. He will miss holidays, birthdays, and family events. He will likely see loved ones die before his release. While all of this is a consequence of his behavior and choices, it is a facet of punishment for the court to consider.

2.    *Deterrence and Protecting the Public*

Mr. Ellis argues that incarceration is not the only way to protect the public. In *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008), the appellate court noted that protection of the public could still be served by a downward variance. The court opted to pursue the goals of protecting the public and deterring future criminal conduct "through extensive counseling and treatment and an extensive period of supervised release, which itself contains substantial limitations on an individual's freedom." *Id.* at 597 Likewise, a sentence here should require that Mr. Ellis comply with counseling, report to the federal supervisor, establish a stable residence, and locate employment.

Besides the on-going court review, Mr. Ellis will be subject to civil reporting requirements. Mr. Ellis must report to the local authorities periodically and update his address. The state authorities maintain a public,

searchable database with the offender's name, address, and photograph, and the database provides general information about the person's conviction. Failure to update such information as required is a separate criminal offense, which can subject a person to additional criminal charges for a failure to register appropriately.

*3.    Needed Educational or Vocational Training*

Although the Court can recommend placement, counseling and educational or vocational programming to the Bureau of Prisons, such recommendations are not binding on the Bureau. However, if the Court orders Mr. Ellis to comply with conditions of supervision, the Court, through the United States Probation Officer, can monitor his progress while on supervised release.

Mr. Ellis clearly needs both mental health counseling and sexual offender counseling. Mr. Ellis was tested for the gifted program when he was in first grade.10 The school psychologist found he had average intelligence, with an IQ of 101 but with scattered results. For instance, she said he scored below average on verbal comprehension and processing speed with a particular weakness in practical reasoning, and higher in several other areas. Mr. Ellis

---

10 See Exhibit 4, Leon County School records.

was not placed in the gifted program.

The school evaluation results are mirrored in IQ testing done in 2023 by Dr. Valerie McClain, PsyD, a neuropsychologist retained by the undersigned to conduct neuropsychological testing on Mr. Ellis.[11] Dr. McClain found a slightly higher IQ but the same scatter and deficits. She found symptoms in his life consistent with untreated depression, stemming back to middle school. "His untreated mental health issues likely contributed to his behaviors leading to the present offense including limited coping skills and social skills with respect to developing appropriate interpersonal and sexual relationships," Dr. McClain opined. Notably, the Presentence Report also cites Mr. Ellis's "untreated mental and emotional health concerns" as among reasons a below-guideline sentence is warranted. (Paragraph 122). Dr. McClain recommended mental health treatment, to which he is amenable, be part of his sentence, with possible medication management to address his mental health issues.

At Dr. McClain's suggestion, the undersigned also retained Dr. George Deitchman, PhD, for a psychosexual evaluation. Dr. Deitchman found Mr. Ellis likely meets the criteria for major depression, persistent depressive disorder or generalized anxiety, as well as pedophilic disorder with an attraction to

---

11 Dr. McClain's report is attached as Exhibit 5.

females, and possible PTSD. Dr. Deitchman suggested that Mr. Ellis's emotional and mental health problems likely stem from his middle school trauma and his social withdrawal that followed and continues. Dr. Deitchman said Mr. Ellis would benefit from a therapeutic program in prison, in both group and individual settings, to help with his pedophilic interests as well as his trauma, anxiety, and depression.[12]

## UNWARRANTED SENTENCING DISPARITY

Mr. Ellis had five named codefendants (Presentence Report, page 2). Two have been sentenced to 20 years and one to 25 years. One has prior convictions for child pornography. Of the other two, one has pleaded guilty and is pending sentencing in the Southern District of California, and one is awaiting trial in the Eastern District of Michigan.

In its report, the Commission noted that the average sentence imposed in production offenses was very lengthy (275 months), the courts imposed the longer sentences on offenders who victimized infants or toddlers, were parents of victims, engaged in or facilitated sexual contact of a minor, or incapacitated victims. *Federal Sentencing of Child Pornography: Production Offenses*, at 7.

---

[12] A copy of Dr. Deitchman's report is attached as Exhibit 6.

## CONCLUSION

*"I HAVE ALWAYS FOUND THAT MERCY BEARS RICHER FRUITS THAN STRICT JUSTICE." ABRAHAM LINCOLN, SPEECH IN WASHINGTON D.C., 1865.*

Here, the court must recognize society's natural repugnance with crimes of this type. However, respect for the law is promoted by punishments that are fair, not those that simply punish for punishment's sake. But it can also recognize Mr. Ellis's youth, remorse, and potential in fashioning its sentence.

Dated:        October 23, 2024.

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER, MDFL

s/ *Lisa Call, Esq.*
Lisa Call, Esq.
Assistant Federal Defender
Fla Bar Number 0896144
200 West Forsyth Street
Suite 1240
Jacksonville FL 32202
Telephone: 904-232-3039
Facsimile: 904-232-1937
Lisa_call@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic filing through the United States District Court to D. Rodney Brown, Assistant United States Attorney, 300 North Hogan Street, 7th Floor, Jacksonville, FL 32202 on October 23, 2024.

s/ <u>*Lisa Call, Esq.*</u>
Lisa Call, Esq.
Assistant Federal Defender

14